UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN WILLIAMS, on behalf of himself and all others similarly situated, | Case No. 1:11-cv-647 |
| Plaintiff, | |
| | CLASS ACTION COMPLAINT |
| v. | |
| | JURY TRIAL DEMANDED |
| TIME WARNER CABLE INC., c/o The Corporation Trust Company Corporation Trust Center 1209 Orange Street Wilmington, Delaware 19801 | |
| ABC Companies, 1-100 | |
| Defendants. | |

Plaintiff John Williams brings this action individually and on behalf of all others similarly situated against Defendant Time Warner Cable Inc. ("TWC" or "Defendant")[1] for routinely soliciting customers to enroll in a "Price Lock Guarantee" program (the "Program") by falsely representing that TWC will "lock" their price at a discounted rate and not raise the rate for the term of the two-year commitment period.  Because TWC regularly raises rates on its Program customers prior to the conclusion of the two-year commitment period,  TWC has breached and continues to breach its contract and engaged and continues to engage in unfair, deceptive, and unconscionable acts and practices in connection with a consumer transaction in violation of Ohio Rev. Code §§ 1345.02 and/or 1345.03.  Plaintiff makes the following allegations upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.  Each allegation in this Complaint either has

---

[1] For purposes of this Complaint, "Defendant" is defined to include TWC and ABC Companies, 1-100.

evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1. Plaintiff brings this putative class action on behalf of himself and all other individuals who, during the largest period allowed by law ("Relevant Time Period"), enrolled in the Program based on TWC's standardized representations and who were subsequently charged a price increase for "bundled services" prior to the expiration of an original or renewed two-year "price lock" commitment period.

2. Pursuant to the Program, TWC offers purportedly discounted monthly service rates to individuals who commit to purchase two or more TWC services (e.g., cable television, internet, telephone, etc.) for a two-year period.  This discounted rate for the "bundled" services, according to TWC's representations, is "locked-in" for the duration of the two-year commitment term so that the customer can rest assured that TWC will not raise the discounted price during the "price lock" term.  Under the Program, the two-year commitment period automatically renews for an additional 24-month commitment period unless the customer notifies TWC of its intent to terminate services prior to the expiration of the original commitment period.

3. Despite TWC's clear, unambiguous, and standardized representations that no rate increases would be implemented during the two-year price lock for those who enroll in the Program, TWC routinely raises rates on Program enrollees prior to the expiration of their original and/or renewed two-year commitment periods.

4. By raising the monthly rates of customers enrolled in the Program prior to the expiration of their commitment periods, TWC breaches its contract with its customers and

engages in unfair, deceptive, and unconscionable acts in violation of the Ohio Consumer Sales Practices Act.

## PARTIES

5. Plaintiff John Williams is an Ohio citizen residing in Hamilton County.

6. Defendant TWC is a Delaware corporation with its principal place of business in New York, New York. TWC sells cable and media services to customers located across the country, including Ohio.

7. Defendants ABC Companies 1-100, names and addresses unknown, include any parent, holding company, joint venture partner, subsidiary, agent, or subcontractor of TWC otherwise responsible, involved, or liable for the actions described in this Class Action Complaint.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and most members of the proposed class are citizens of states different from the state of the Defendant.

9. The Court has personal jurisdiction over TWC because TWC conducts significant, continuous, regular and systematic business in this District.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b) because TWC transacts significant business throughout this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Venue is also proper under 28 U.S.C. § 1391(c) because TWC is subject to personal jurisdiction in this District.

**FACTUAL ALLEGATIONS**

11. In or around March 2008, Plaintiff, to the best of his recollection, visited a TWC customer service center located at 3268 Highland Avenue, Cincinnati, OH 45245 for the purpose of exchanging malfunctioning equipment. During the course of the transaction, a TWC representative/employee solicited him to enroll in TWC's "Price Lock Guarantee" Program. Upon information and belief, the representative/employee's sales pitch, questions, and answers were all scripted and standardized.

12. TWC represented that under the Program, if Plaintiff committed to subscribe to two or more of its services for a two-year period, TWC would charge Plaintiff a discounted monthly rate for the services and that discounted monthly rate would be "guaranteed" or "locked" for the term of the two-year commitment period. Pursuant to this "guarantee," TWC offered to not increase the price for the bundled services for two years if Plaintiff committed to purchase the TWC services for a commensurate period of time.

13. Based on the TWC's representations, Plaintiff accepted TWC's offer and agreed to enroll in the Program and commit to purchase cable television and high-speed internet services from TWC for two years at the agreed upon "bundled" and "guaranteed" rate. To the best of Plaintiff's recollection, the TWC representative/employee presented Plaintiff with a written contract to formalize the agreement. Plaintiff signed the contract. Although TWC did not provide Plaintiff a copy of the contract he signed, upon information and belief, the contract was substantially similar to the standardized "Price Lock Guarantee Letter of Agreement" (the "Contract") attached hereto as Exhibit A.

14. The Contract provides that "[t]he service plan you have selected requires a [24] month Price Lock Guarantee agreement in order for you to receive discounted services. There is

an early termination fee up to $150 for cancelling the contract before the term expires." Exh. A. "At the end of the [24] month period, your Price Lock Guarantee discounted services will automatically renew for an additional [24] month term unless you notify Time Warner Cable that you wish to terminate or downgrade any or all of the Price Lock Guarantee services." Exh. A. The Contract also states that "*[e]xcept for the monthly fees – which you can always be sure of –* Time Warner Cable has the right to modify or delete any aspect, feature or requirement of the Price Lock Guarantee package or its individual components." Exh. A. (emphasis added).

15. Despite language in the Contract stating that "[s]oon you will be receiving a confirmation letter that spells out the terms and conditions of the Price Lock Guarantee in greater detail," Plaintiff does not recall receiving around that time any written confirmation of his agreement with TWC. Plaintiff did begin receiving monthly statements in the mail from TWC reflecting a "DIGITAL CABLE PLUS HIGH SPEED DATA" rate of $117.35 (not including additional add-on charges, such as taxes and fees, converter box, network, and service charges, and other costs pertaining to upgraded television programming packages). One such statement evidencing the guaranteed $117.35 rate is attached hereto as Exhibit B.

16. Plaintiff has timely and fully paid each invoice he has received from TCW.

17. Pursuant to the Program's automatic renewal provision, Plaintiff's 24-month commitment term automatically renewed without incident in or around March 2010, the two-year anniversary of his enrollment in the Program. Plaintiff did not notice any change to his rate at or around the time of the renewal.

18. However, beginning with the statement for the March 21, 2011 to April 20, 2011 service period – 12 months after his Contract with TWC automatically renewed for an additional two-year price lock period – and continuing through the present, TWC increased the charge for

5

"DIGITAL CABLE PLUS HIGH SPEED DATA" on each of Plaintiff's monthly statements by $7.50, from $117.35 to $124.85, in violation of the terms of the "Price Lock Guarantee." A copy of Plaintiff's statement for the March 21, 2011 to April 20, 2011 service period reflecting the price increase is attached hereto as Exhibit C.

19. Plaintiff received no explanation from TWC for this rate increase.

## CLASS ACTION ALLEGATIONS

20. Plaintiff seeks to represent a class defined as all persons nationwide who, during the Relevant Time Period, enrolled in the Program and were charged a price increase for bundled services prior to the expiration of an original or renewed two-year commitment term (hereafter, the "Class"). Plaintiff also seeks to represent an Ohio Sub-Class defined as all persons residing in Ohio who, during the Relevant Time Period, enrolled in the Program and were charged a price increase for bundled services prior to the expiration of an original or renewed two-year commitment term (hereafter, the "Ohio Sub-Class").[2] Excluded from the Class and Sub-Class are (1) TWC, any entity in which TWC has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

21. Members of the Class and Ohio Sub-Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Ohio Sub-Class number in the thousands. The precise number of Class and Ohio Sub-Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery. Class and Ohio Sub-Class members may be notified of the pendency of this action by mail, email, and/or publication through the business records maintained by TWC.

---

[2] Plaintiff reserves the right to amend the Class definitions as appropriate.

22. Common questions of law and fact exist as to all Class and Ohio Sub-Class members and predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to:

    a. whether TWC has conducted, and continues to conduct, widespread oral and written solicitation campaigns to enroll customers in the Program;

    b. whether the TWC representatives who solicit customers to enroll in the Program receive the same uniform training and/or follow standardized, scripted sales pitches, questions, and answers;

    c. whether the TWC representatives represent verbally and/or in writing that individuals who commit to purchase two or more TWC services for a two-year period pursuant to the Program will have their discounted rate "locked in" and will not be subject to any rate increase until after the expiration of the commitment period;

    d. whether TWC imposes rate increases on customers enrolled in the Program prior to the expiration of their original and/or automatically renewed two-year commitment periods;

    e. whether such conduct constitutes a breach of contract; and

    f. whether such conduct violates Ohio's Consumer Sales Practices Act.

23. Plaintiff's claims are typical of the claims of Class and Ohio Sub-Class members and do not conflict with the interests of any other member of the Class or Ohio Sub-Class in that he and the other members of the Class and Ohio Sub-Class were subject to the same conduct, were subject to the terms of the same standardized Contract, and were met with the same standardized service rate increases prior to the expiration of the two-year price lock.

24.     Plaintiff will fairly and adequately represent the interests of the Class and Ohio Sub-Class.  He is committed to the vigorous prosecution of the Class' and Ohio Sub-Class' claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

25.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class and Ohio Sub-Class members.  A class action regarding the issues in this case does not create any problems of manageability.  Each individual Class and Ohio Sub-Class member generally lacks the resources to undergo the burden and expense of individual prosecution.  Also, individualized litigation increases the delay and expense to all parties, multiplies the burden on the judicial system, and presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device streamlines this process and presents the only mechanism for the vindication of each Class and Ohio Sub-Class member's rights.  Absent a class action, TWC would be effectively immune from being held accountable for its deceptive practices described above.

26.     Further, TWC has acted or refused to act on grounds that apply generally to the Class and Ohio Sub-Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class and Ohio Sub-Class as a whole.

## COUNT I

### (Breach of Contract)

27.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

28.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Ohio Sub-Class.

29. The standardized verbal and written representations TWC made to Plaintiff while soliciting him to enroll in the Program constitute a valid offer.

30. By agreeing to enroll in the Program and committing to purchase bundled services from TWC at a locked-in rate for a two-year period (subject to automatic renewal), Plaintiff accepted the offer.

31. The standardized and scripted sales pitch, questions, and answers provided by the TWC representative — and the contract signed by Plaintiff , which Plaintiff believes was substantially similar to the Contract attached as Exhibit A — contained definite and essential terms reflecting a meeting of the minds between Plaintiff and TWC regarding Plaintiff's commitment to pay for bundled services for a two-year term (subject to automatic renewal) in exchange for TWC's commitment not to raise his rates during the two-year commitment period.

32. The agreement reflects a bargained-for exchange that involves legal detriment undertaken by the promisee and/or a corresponding benefit to the promisor, and is, accordingly, properly supported by valuable consideration.

33. Plaintiff and TWC thereby formed a valid and enforceable contract.

34. Plaintiff has performed his obligations under the terms of the Contract and has satisfied all conditions precedent to its enforcement.

35. By imposing a rate increase on Plaintiff before the expiration of a two-year commitment term, TWC breached the agreement.

36. Plaintiff has suffered, and continues to suffer, harm from TWC's breach, including, but not limited to, the increased monthly payments he has been forced to pay to date and continues to pay on each monthly statement from TWC.

## COUNT II

### (Promissory Estoppel)

37. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

38. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Ohio Sub-Class.

39. As part of its standardized oral and written solicitation efforts, TWC made a clear and unambiguous promise to Plaintiff that if he committed to purchase two or more bundled TWC services for a two-year period (subject to automatic renewal), TWC would charge him a discounted rate which would not increase for the duration of the two-year commitment period.

40. By soliciting Plaintiff, TWC intended to induce Plaintiff to rely upon its promise described above.

41. Plaintiff did rely on TWC's promise when he agreed to enroll in the Program and obligated himself to purchase bundled services from TWC for a two-year period (subject to automatic renewal).

42. Plaintiff's reliance was reasonable and foreseeable.

43. Plaintiff's reliance was to his detriment, because he has suffered damages, including, but not limited to, the increased monthly payments he has been forced to make prior to the expiration of the two-year commitment period.

## COUNT III

### (Unjust Enrichment)

44. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Ohio Sub-Class.

46. TWC received benefits from, and at the expense of, Plaintiff, who paid (and continues to pay) increased monthly service rates improperly billed to him in contravention of his agreement with TWC.

47. TWC had knowledge of and accepted this benefit conferred by Plaintiff.

48. TWC has retained this benefit under circumstances that render it unjust and inequitable to permit TWC to retain the benefit without compensating Plaintiff.

## COUNT IV

### (Ohio Consumer Sales Practices Act)

49. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50. Plaintiff brings this claim individually and on behalf of the members of the proposed Ohio Sub-Class.

51. TWC is a "supplier" as that term is defined in Ohio Rev. Code § 1345.01(C).

52. Plaintiff and the members of the Ohio Sub-Class are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D).

53. TWC's acts and practices as described above constitute unfair, deceptive, and unconscionable acts and practices in connection with a consumer transaction in violation of Ohio Rev. Code §§ 1345.02 and/or 1345.03. For example, by inducing Plaintiff to commit to purchase bundled services from TWC for a two-year term (subject to automatic renewal) by falsely representing that TWC would "lock" his price at a discounted rate and not raise it for the term of

the agreed upon original two-year commitment period and subsequent renewed two-year commitment period, TWC committed:

       (a)     a deceptive act under the standards set forth in Ohio Rev. Code §§ 1345.02(B)(1) ("consumer transaction has … performance characteristics, … uses, or benefits that it does not have"), 1345.02(B)(5) ("the subject of the consumer transaction has been supplied in accordance with a previous representation, if it has not"), and 1345.02(B)(8) ("a specific price advantage exists, if it does not"); and

       (b)     an unconscionable act under the standards set forth in Ohio Rev. Code §§ 1345.03(B)(3) ("supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the transaction"), 1345.03(B)(5) ("terms the supplier knew were one-sided in favor of the supplier"), 1345.03(B)(6) ("supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment").

54.     Pursuant to Ohio Rev. Code § 1345.09(B), these violations were acts or practices declared to be deceptive or unconscionable by administrative rule adopted under division (B)(2) of §1345.05 of the Revised Code before the transactions on which this action is based, including, but not limited to, O.A.C. 109:4-3-10 ("It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:  (A) Make any representations, claims, or assertions of fact, whether verbally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective,

quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact") and O.A.C. 109:4-3-03 (Bait and Switch advertising). Further, pursuant to O.R.C. §1345.09(B), these violations were acts or practices determined by a court of this state to violate sections 1345.02 or 1345.03 of the Revised Code and were committed after the decisions containing these determinations has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code. These cases include, but are not limited to: *State ex rel. USA Cable Company* (2001), Huron C.P. Case No. CVH-2001-466, PIF No. 10002058 (television equipment and programming seller committed unfair, deceptive, and unconscionable acts in violation of Sections 1345.02 and 1345.03 by making false and misleading statements concerning material terms of the transaction, including, among other things, the amount of the monthly payments).

55. As a direct and proximate result of Defendant's violation of Ohio Rev. Code §§ 1345.02 and 1345.03, Plaintiff and the Ohio Sub-Class have been damaged in an amount that will be proven at trial.

56. In addition, Plaintiff and the Ohio Sub-Class are entitled to appropriate declaratory and injunctive relief pursuant to Ohio Rev. Code §1345.09(D) ("[a]ny consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter") and reasonable attorneys' fees and expenses pursuant to Ohio Rev. Code §1345.09(F).

## PRAYER FOR RELIEF

57. WHEREFORE, Plaintiff, on behalf of himself and on behalf of the members of the proposed Class and Ohio Sub-Class, prays: (a) for an order certifying the proposed Class and Ohio Sub-Class and appointing Plaintiff and his undersigned counsel of record to represent the

proposed Class and Ohio Sub-Class; (b) for a judgment declaring the acts and practices complained of herein to constitute a breach of contract, or alternatively a declaration that TWC is bound by the doctrine of promissory estoppel to fulfill its promises made to Class and Ohio Sub-Class members; (c) for permanent or final injunction enjoining TWC and its agents, employees, affiliates and subsidiaries from continuing to harm Plaintiff and members of the Class and Ohio Sub-Class; (d) for an order requiring specific performance of TWC's contractual obligations together with other relief required by contract and law; (e) for an award of actual and statutory damages for Plaintiff and members of the Class and Ohio Sub-Class; (f) for costs of suit herein; (g) for both pre- and post-judgment interest on any amounts awarded; (h) for payment of reasonable attorneys' fees, and (i) for such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

s/Jeffrey S. Goldenberg
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
Robert Sherwood (0084363)
Goldenberg Schneider, LPA
35 East Seventh Street, Suite 600
Cincinnati OH 45202-2012
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

Christian A. Jenkins
Minnillo & Jenkins, Co. LPA
2712 Observatory Avenue
Cincinnati, OH 45202
Telephone: (513) 723-1600
Facsimile: (513) 345-1620
cjenkins@minnillojenkins.com