**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**JOHN WILLIAMS, on behalf of himself and all others similarly situated,**

**Plaintiff,**

**v.**

**TIME WARNER CABLE INC., and ABC COMPANIES, 1-100,**

**Defendants.**

**Case No. 1:11-cv-00647-SAS-SKB**

**Judge: S. Arthur Spiegel**

**Magistrate Judge: Stephanie K. Bowman**

**DEFENDANT TIME WARNER CABLE INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE, STAY THIS ACTION PENDING ARBITRATION**

## I. INTRODUCTION

Plaintiff's lawsuit is premised on a factual mistake. Plaintiff's sole allegation of wrongdoing in his Complaint is that Defendant Time Warner Cable Inc. ("TWC") increased his monthly fee during the second 12 months of his 24-month "Price Lock Guarantee" renewal period. According to Plaintiff, his rate was supposed to remain the same throughout the entire 24 month period. In fact, Plaintiff had signed up for a package that was designed to increase in the thirteenth month of every 24 month period. Indeed, the Price Lock Guarantee's terms and conditions expressly stated that "your discounted rate will increase at month 13 of your 24 month term." (*See* Ex. 1, Declaration of Rob Fordham ("Fordham Dec."), at Ex. E & F.) In addition, Plaintiff's intervening renewal letter also expressly provided that the rate would increase during the second year. *See infra* at p. 2-3. *Thus, the entire premise of the lawsuit—that the price would not increase—is in error*. TWC's counsel has provided Plaintiff's counsel with the

correct documentation and asked Plaintiff's counsel to dismiss the action on that basis. That request is still pending.

More fundamentally, Plaintiff's lawsuit should be dismissed because his claims are subject to an express mandatory arbitration clause that requires the Plaintiff to arbitrate his claims. Plaintiff's subscription agreement with TWC requires him to arbitrate any disputes with TWC arising out of Plaintiff's relationship with TWC, and the terms and conditions of the alleged Price Lock Guarantee that form the basis for his claims are expressly part of his subscription agreement. Accordingly, this Court should compel arbitration and dismiss Plaintiff's claims. In the alternative, at a minimum, the Court should stay the case pending arbitration.

## II. BACKGROUND

### A. The Entire Premise Of Plaintiff's Lawsuit Is Simply In Error.

Plaintiffs' entire lawsuit rests on a faulty premise and should not have been filed. Plaintiff alleges that he enrolled in a Price Lock Guarantee package in March 2008 for a 24-month period, and he allowed the Price Lock Guarantee to be automatically renewed for another 24-month period starting in March 2010. Plaintiff's sole allegation of wrongdoing is that by increasing his monthly fee by $7.50 in March 2011—13 months into his second 24-month Price Lock Guarantee period—TWC breached its contract with Plaintiff and violated the Ohio Consumer Sales Practices Act. (Compl. ¶¶ 11-19, 27-36, 49-56.)[1] Plaintiff alleges that his monthly fee was not supposed to change during the two 24-month periods for which he enrolled in his Ohio Price Lock Guarantee package. But, in fact, in enrolling in his Price Lock Guarantee

[1] Based on these facts, Plaintiff also alleges that TWC is liable under theories of promissory estoppel and unjust enrichment. (Compl. ¶¶ 37-48.)

package, Plaintiff agreed that his monthly fee would increase at the thirteenth month of each 24-month period and that is exactly what happened.

When Plaintiff signed up for his Price Lock Guarantee package, the terms and conditions that he received with his confirmation letter stated: "As your Time Warner Cable representative discussed with you at the time of your order, *your discounted rate will increase at month 13 of your 24 month term.*" (Ex. 1, Fordham Dec., at Ex. E, Terms and Conditions, Second Paragraph (emphasis added).) Plaintiff alleges no objection to the fact that his monthly fee had already increased once during the first twenty-four month period of the package under the terms of his agreement. Simply stated, Plaintiff's package locked in set rates that lasted for each twelve month period and that were disclosed to him in advance.

Prior to the second twenty-four month period that is the subject of his complaint, Plaintiff received a renewal notice enclosing the same terms and conditions, which again stated: "As your Time Warner Cable representative discussed with you at the time of your order, *your discounted rate will increase at month 13 of your 24 month term.*" (*Id*. at Ex. F, Terms and Conditions, Second Paragraph (emphasis added).) And the renewal letter provided to Plaintiff expressly stated: "*The price for the first year will be $87.35 and the price for the second year will be $94.85.*" (*Id*. at Ex. F, Renewal Letter, Second Paragraph (emphasis added).) The renewal letter also indicated that, by allowing his Price Lock Guarantee package to renew, Plaintiff would enjoy savings of more than $429 over current standard rates during the second two years alone. (*Id*.) The Price Lock Guarantee offered such savings to Plaintiff by establishing set prices for each defined one year period, which are exactly the prices that TWC charged to Plaintiff. Thus, the entire premise of Plaintiff's Complaint is simply inaccurate.

**B. In Any Event, Plaintiff Agreed To Arbitrate His Claims.**

When Plaintiff first opened his account with TWC in 2003, Plaintiff signed a work order for the account. (*See id*. at ¶ 2 & Ex. A.) Plaintiff agreed that "[m]y signature on this order indicates that (I) (customer) have received and agreed to the terms of the Cable Modem Service Subscription Agreement separately provided to me by Time Warner Cable of Cincinnati. . . . " (*See id*. at Ex. A, hereinafter with amendments, "Subscription Agreement.") Directly above his signature, the work order drew his attention to "Section 13 of that Agreement, which provides that the parties desire to resolve disputes relating to that Agreement through arbitration." (*Id*.) The work order also states that "[s]ubscriber also acknowledges that by agreeing to arbitration, subscriber is giving up various rights, including the right to a trial by jury." (*Id*.) Moreover, the work order stated that "the terms of the Cable Modem Service Subscription Agreement, including Section 13, are incorporated into this work order by reference as if set out in full." (*Id*.)

Consistent with the work order, the Subscription Agreement provided that "[a]ny controversy or claim arising out of or related to this agreement . . . shall be resolved by binding arbitration . . . under the then-current commercial arbitration rules of the American Arbitration Association." (*See id*. at Ex. B ¶ 13.) It also provided that "either party may seek equitable or injunctive relief only in an appropriate court of law or equity," but that "[n]o claim subject to arbitration under this agreement may be combined with a claim subject to resolution before a court of law or equity." (*Id*.) It also provided that "[t]he arbitrability of disputes shall be determined by the arbitrator," and "[c]onsolidated or class action arbitrations shall not be permitted." (*Id*.)[2]

[2] The quoted language from the work order and Subscription Agreement was set forth in all capital letters. On January 26, 2004, Rene Filiatraut signed another work order for additional work at Plaintiff's home, agreeing

Over time, the arbitration clause has been amended by superseding versions of the Subscription Agreement.[3] (*See id*. at ¶ 4.) The current version, effective on the date that Plaintiff filed his Complaint, provides, in pertinent part:

> 15. Unless you Opt Out, You are Agreeing to Resolve Certain Disputes Through Arbitration
>
> (a) Our goal is to resolve Disputes fairly and quickly. However, if we cannot resolve a Dispute with you, then, except as described elsewhere in Section 15, each of us agrees to submit the Dispute to the American Arbitration Association for resolution under its Commercial Arbitration Rules or, by separate mutual agreement, to another arbitration institution. As an alternative, you may bring your claim in your local "small claims" court, if its rules permit it.
>
> (b) You may bring claims only on your own behalf, and not on behalf of any official or other person, or any class of people. Only claims for money damages may be submitted to arbitration; claims for injunctive orders or similar relief must be brought in a court. You may not combine a claim that is subject to arbitration under this Agreement with a claim that is not eligible for arbitration under this Agreement. The arbitrator will decide whether a dispute can be arbitrated.

(*See id*. at ¶ 4 & Ex. D ¶ 15.)

"Dispute" is defined as "any dispute, claim, or controversy between you and TWC regarding any aspect of your relationship with us, including those based on events that occurred prior to the date of this Agreement." (*See id*. at Ex. D ¶ 16.) The provision also allows customers to opt out of arbitration under certain terms and conditions by providing notice to TWC, but Plaintiff never exercised his right to opt-out in accordance with the terms of the

(continued…)

that she had authority to do so. That work order again incorporated the Subscription Agreement and called attention to the arbitration clause, just as the 2003 work order did. (*See id*. at ¶ 3 & Ex. C.)

[3] TWC notified Plaintiff of changes in the Subscription Agreement and, under the terms of his agreement, Plaintiff accepted those changes by continuing to use TWC services. (*See id*. at Ex. B ¶ 2(e).) As the argument below makes clear, however, none of the changes to the arbitration clause makes any difference as to the arbitrability of Plaintiff's claims. Rather, his claims would be subject to arbitration under any historical version of the arbitration clause.

Subscription Agreement. (*See id*. at ¶ 7 & Ex. D ¶ 15.) The first page of the Subscription Agreement alerts customers, in all capital letters, that the agreement "contains a binding 'arbitration clause,' which says that you and TWC agree to resolve certain disputes through arbitration. You have the right to opt out of this part of the agreement. See Section 15." (*See id.* at Ex. D.)

In 2008, Plaintiff signed up for a 24-month "Price Lock Guarantee" package, which provided that he would pay certain pre-established monthly fees during each twelve month portion of the 24-month package for his TWC services. (*See id*. at ¶ 5.) Plaintiff alleges that, when he signed up, he received a Price Lock Guarantee Letter of Agreement. (Compl. ¶ 13.) Based on Plaintiff's Complaint, that document informed him that he would receive a confirmation letter that "spelled out the terms and conditions of the Price Lock Guarantee package in greater detail." (Compl. Ex. A.) The confirmation letter enclosed a brochure with the terms and conditions of the Plaintiff's Price Lock Guarantee package, which were identified as "a binding addition to your Time Warner Cable Residential Services Subscriber Agreement." (*See* Ex. 1, Fordham Dec., at ¶ 5 & Ex. E.) In February 2010, Plaintiff also received an automatic renewal notice for his Price Lock Guarantee package, informing him that his package was set to renew for another 24 months on March 10, 2010. The renewal letter again enclosed the Price Lock Guarantee terms and conditions, which stated that they were "a binding addition to your Time Warner Cable Residential Services Subscriber Agreement." (*See id*. at ¶ 6 & Ex. F.)

Notwithstanding the fact that Plaintiff expressly agreed to increased pricing, and notwithstanding the parties' express arbitration provision barring Plaintiff's civil claims, Plaintiff filed this lawsuit. Because Plaintiff's claims clearly arise out of a dispute with TWC and

because the Plaintiff's Subscription Agreement includes a mandatory arbitration clause, TWC requested on November 16, 2011 that Plaintiff dismiss this case and proceed in the appropriate forum. To date, Plaintiff has not done so. Accordingly, the Court should compel arbitration and dismiss the Complaint. Under the parties' agreement, the arbitrator should decide the merits of Plaintiff's claims. At a minimum, in the alternative, the Court should stay these proceedings pending arbitration.

## III. ARGUMENT

### A. The Court Should Compel Arbitration And Dismiss Plaintiff's Complaint.

#### 1. Federal Law Requires Enforcement Of Arbitration Agreements And Resolves Any Doubt In Favor Of Arbitrability.

Regardless of the merits of Plaintiff's claims, federal law compels arbitration in this case. The Federal Arbitration Act ("FAA") requires enforcement of valid arbitration agreements. 9 U.S.C. § 2. There is a strong federal policy favoring arbitration, and "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983). The United States Supreme Court has found that by honoring arbitration agreements and considering only those issues that go to the arbitration agreement's validity, a court "not only honor[s] the plain meaning of the [Federal Arbitration Act] but also the unmistakably clear congressional purpose that the arbitration procedure . . . be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

While federal law compels arbitration in this case and controls here, the result would be the same under Ohio law as well. The Ohio Arbitration Act ("OAA") and Ohio public policy strongly favor arbitration as well. The OAA states:

> A provision in any written contract . . . to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

Ohio Rev. Code § 2711.01(a). The Ohio Supreme Court has acknowledged that "[b]oth the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration." *Hayes v. Oakridge Home*, 908 N.E.2d 408, 411 (Ohio 2009). "Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute." *Id*. (citation and punctuation omitted).[4]

Federal law allows a party to an arbitration agreement to seek an order compelling arbitration, 9 U.S.C. § 4, and/or a stay of litigation pending arbitration, 9 U.S.C. § 3. When all of the issues raised in the action are subject to arbitration, the Court should also "dismiss the lawsuit for lack of subject matter under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Aracri v. Dillard's, Inc.*, 2011 U.S. Dist. LEXIS 41596 (S.D. Ohio Mar. 29, 2011) (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *see also United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Indus. v. Ross Brothers Cons. Co.*, 191 F.3d 714, 719 (6th Cir. 1999) (affirming district court's dismissal of counterclaim based on

[4] As Ohio courts have found, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 842 N.E.2d 488, 492 (Ohio 2006) (citations and punctuation omitted). "In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor." *Hayes*, 908 N.E.2d at 412.

existence of arbitration agreement); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("[T]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." (citations and emphasis omitted)); *C.H.I. Inc. v. Marcus Bros. Textile, Inc.*, 930 F.2d 762, 764 (9th Cir. 1991) (affirming granting of motion to dismiss where parties agreed to arbitrate disputes); *Lewis Tree Service v. Lucent Tech., Inc.*, 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) ("Because all of Ironman's claims are subject to arbitration, no useful purpose will be served by granting a stay of Ironman's claims and thus its action against the defendants is dismissed.").[5]

Applying these settled principles, courts routinely compel arbitration in cases alleging breach of contract, violations of the Ohio Consumer Sales Practices Act, and related claims in which the parties agreed to arbitrate their disputes. *See, e.g.*, *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 774 (N.D. Ohio 2009); *Phelps v. U.S. Metals Group*, 2010 U.S. Dist. LEXIS 19392, at *16 (N.D. Ohio Mar. 4, 2010); *see also Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 368 (Ohio 2008). The same result applies here and compels arbitration of Plaintiff's claims.

**2. The Parties' Arbitration Agreement Requires Arbitration In This Case.**

Plaintiff's arbitration agreement mandates that Plaintiff's claims be dismissed and that Plaintiff proceed individually in arbitration. The Price Lock Guarantee terms and conditions that are at the heart of this matter make clear that they are "a binding addition" to Plaintiff's Subscription Agreement. (Ex. 1, Fordham Dec., at Ex. E & F.) The Subscription Agreement provides that a customer agrees to arbitrate "any dispute, claim, or controversy between you and

[5] In its Motion, TWC cites to civil Rules 12(b)(1), (3), and (6), as well as 9 U.S.C. §§ 2, 3, and 4 because federal courts have cited such authority to enforce arbitration agreements and dismiss or stay certain claims subject to arbitration. At this stage, TWC is merely moving to enforce the arbitration agreement, separate and apart from the merits of Plaintiff's claims.

TWC regarding any aspect of your relationship with us, including those based on events that occurred prior to the date of this Agreement." (*Id*. at Ex. D ¶¶ 15, 16.) The arbitration provision adds that a customer "*may bring claims only on your own behalf, and not on behalf of any official or other person, or any class of people*." (*Id*. at Ex. D ¶ 15 (emphasis added).)

Plaintiff's claims are based solely on an increase in monthly fees during his second 24-month Price Lock Guarantee period, which Plaintiff alleges is contrary to his contract with TWC. Plaintiff makes no other allegations of wrongdoing other than the allegedly unauthorized price increase in March 2011, halfway through his second 24-month Price Lock Guarantee period. Accordingly, there can be no question that Plaintiff's claims fall within the scope of arbitrable disputes, i.e., "any dispute, claim, or controversy between you and TWC regarding any aspect of your relationship with us."

Moreover, the Supreme Court has clearly erased any doubt as to the enforceability of an arbitration provision barring class action arbitrations over state law claims like the ones present here. *See AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 1752 (2011). In so ruling, the Court noted that "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id*. at 1748. The same result applies here.

The Complaint's reference to injunctive and other non-monetary relief does not change the result. At the outset, the arbitration clause that governs this dispute makes clear that Plaintiff "may not combine a claim that is subject to arbitration under this Agreement with a claim that is not eligible for arbitration under this Agreement." (Ex. 1, Fordham Dec., at Ex. D ¶ 15.) The Complaint here attempts to do exactly that. Plaintiff's prayer for relief clearly seeks, on behalf of a putative class, actual and statutory damages, costs of suit, pre- and post-judgment interest,

and attorneys' fees. (Compl. at ¶ 57.) Plaintiff's request for injunctive and other non-monetary relief is thus directly contrary to the arbitration provisions, and must be dismissed.

Moreover, the injunction exception in the arbitration agreement has no application here under any scenario. Although the arbitration agreement allows claims for injunctive relief in an appropriate court of law under certain conditions, such provisions have no import here because, among other things, the Plaintiff fails to allege any ongoing irreparable injury and no injunctive relief is required to keep Plaintiff's claim from being rendered a nullity. In *Kwasny Co. v. Acrylicon Int'l Ltd.*, 2010 U.S. Dist. LEXIS 58149 (E.D. Mich. June 11, 2010), for instance, another federal court in the Sixth Circuit rejected the argument that an arbitration clause allowing the parties to "pursue injunctive relief where appropriate in any court of competent jurisdiction" permitted a party to pursue injunctive relief in Court before arbitrable claims were decided. *Id*. at *22. Rather, the court construed its authority to grant injunctive relief in that instance "as limited to such relief as is necessary to avoid rendering the process of arbitration meaningless or a hollow formality." *Id*. (citation and punctuation omitted). Since injunctive relief was not "necessary to preserve the viability of the parties' chosen method of dispute resolution," the court refused to allow any injunctive-relief claim to proceed while the arbitrable claims were pending. *Id*. at *22, *25.

Finally, even if the clear language of the Subscription Agreement were ignored, all of the claims subject to arbitration should proceed to arbitration and the injunctive relief claims should be dismissed without prejudice since the underlying factual allegations are inextricably intertwined with the arbitrable claims. As a result, the factual disputes underlying the claims should be resolved by the arbitrator. *See Blanchard Valley Health Ass'n v. ProMedica Health Sys.*, 2006-Ohio-5966, ¶ 26, 2006 Ohio App. LEXIS 5904, at *18 (Ohio Ct. App. 2006) (holding

that when "overall transaction" involved an agreement with an arbitration clause, an alleged violation of another agreement without an arbitration clause was "inextricably intertwined" and must be arbitrated.). Even when claims are made against third-parties outside of an arbitration agreement, courts routinely defer to arbitration when those claims are inextricably intertwined with claims subject to arbitration. *See, e.g.*, *Gordon v. Royal Palm Real Estate Inv. Fund I, LLP*, 2011 U.S. Dist. LEXIS 22911, at *26 (E.D. Mich. Mar. 8, 2011) (staying litigation of claims against parties outside of arbitration agreement when claims were intertwined with arbitrable claims); *Vaughn v. Marshall*, 2009 U.S. Dist. LEXIS 98171, at *6-*7, *15 (S.D. Ohio Oct. 8, 2009) (same).

Thus, as the arbitration provision makes clear, the Plaintiff cannot bring his damage claims in this Court as he has sought to do. Moreover, no injunctive relief is necessary to preserve Plaintiff's rights to proceed to arbitration and no irreparable injury is even alleged by Plaintiff. Plaintiff merely challenges an increase in his monthly service charge during the second half of his Price Lock Guarantee period. If Plaintiff were ever to prevail, he could be made whole by way of a simple refund. In this case, there can be no serious doubt that the Plaintiff's core claims are subject to arbitration. Finally, even if Plaintiff were somehow permitted to bring injunctive relief claims, his claims subject to arbitration should proceed to arbitration and should be decided by the arbitrator first since they are inextricably intertwined with his principal claim for damages. Accordingly, Plaintiff's Complaint should be dismissed, and this matter should proceed in arbitration.

**B. In The Alternative, The Court Should Stay The Case Pending Arbitration.**

Even if the Court were to find that the arbitrability of some of Plaintiffs' claims were in genuine dispute, the Court should stay this case pending both (1) a determination by the

arbitrator as to the arbitrability of Plaintiff's claims and (2) the outcome of arbitration on any claims that the arbitrator finds arbitrable.

If any genuine dispute as to the arbitrability of Plaintiff's claims exists, the Court should stay the case while an arbitrator resolves that dispute. Where the parties "have clearly and unmistakably vested the arbitrator with the authority to decide the issue of arbitrability, the question of whether a matter is arbitrable is to be decided by the arbitrator." *Belmont Cty. Sheriff v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 820 N.E.2d 918, 921 (Ohio 2004); *see also Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 769 (E.D. Mich. 2010). "Consistent with the express language of [such an] arbitration clause, it is for the arbitrator, and not the courts, to decide whether the parties have an agreement for arbitration that encompasses the dispute between them." *Cheney v. Sears, Roebuck and Co.*, 2005-Ohio-3283, ¶ 13, 2005 Ohio App. LEXIS 3052, at *10-*11 (Ohio Ct. App. 2005) (affirming stay of case when arbitrator found some claims arbitrable); *see also Union Twp., Clermont Cty. v. Union Twp. Professional Firefighters' Local 3412*, 756 N.E.2d 204, 209 (Ohio Ct. App. 2001) (a "court does not determine the issue of arbitrability where the contract itself reserves the question of arbitrability for the arbitrator"). Here, the Subscription Agreement unambiguously provides that "[t]he arbitrator will decide whether a dispute can be arbitrated." (Ex. 1, Fordham Dec., at Ex. D ¶ 15.) Accordingly, the Court should, at the very least, stay this case while the arbitrator decides any possible dispute about the arbitrability of Plaintiff's claims.

Moreover, even if there were a non-arbitrable claim, it would be appropriate to stay this action while the arbitrator decides the merits of Plaintiff's claims and his entitlement to the monetary damages he seeks. Even against third-party defendants who are not parties to an arbitration agreement, courts routinely stay non-arbitrable "tail-wagging-the-dog" type claims

that are "inextricably intertwined" with claims subject to arbitration. *Patnik v. Citicorp Bank Trust FSB*, 412 F. Supp. 2d 753, 763 (N.D. Ohio 2005). Here, Plaintiff's request for injunctive relief is based on the same single theory of wrongdoing as his claims for damages. Any claim for injunctive relief would necessarily require this Court to overlap with an arbitrator on questions of liability as well as questions of the availability and adequacy of monetary damages as relief. *See Gordon*, 2011 U.S. Dist LEXIS, at *24 ("[A] court should stay litigation of non-arbitrable claims where a decision in one forum could affect the resolution of claims in the other." (citation and punctuation omitted)); *id*. at *27 (staying intertwined non-arbitrable claims against parties outside of arbitration agreement because "allowing the case to go forward could subvert the arbitration agreement" between the other parties, and "arbitration could, arguably, resolve some of the contested issues in this case." (citations and punctuation omitted)).

Accordingly, even if the Court were not inclined to dismiss Plaintiff's Complaint in its entirety pursuant to the arbitration clause in the Subscription Agreement, it should at the very least stay consideration of Plaintiff's prayer for injunctive relief until an arbitrator determines the merits (if any) of Plaintiff's liability claims and his entitlement to damages. *See, e.g.*, *Gordon*, 2011 U.S. Dist. LEXIS 22911, at *30; *Vaughn*, 2009 U.S. Dist. LEXIS 98171, at *15; *see also, e.g.*, *Kwasny Co*, 2010 U.S. Dist. LEXIS 58149, at *25 (in case involving arbitration clause permitting injunctive relief claims in court, staying injunctive-relief and other non-arbitrable claims pending outcome of arbitration).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should compel arbitration and dismiss Plaintiff's Complaint. In the alternative, the Court should stay this case pending arbitration.[6]

[6] For purposes of this motion, TWC assumes certain alleged facts are true. Accordingly, nothing in this motion should be construed as an admission of such facts.

Dated: November 21, 2011

Respectfully submitted,

s/Jeffrey J. Jones

Jeffrey J. Jones (0030059)
*Trial Attorney*
jjjones@jonesday.com
Erik J. Clark (0078732)
ejclark@jonesday.com
JONES DAY
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215-2673
Telephone: +1.614.469.3939
Facsimile: +1.614.461.4198

*Attorneys for Defendant*
*Time Warner Cable Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2011, a true and correct copy of the foregoing was sent via email and electronically filed with the Clerk of the United States District Court of the Southern District of Ohio, using the CM/ECF system, which will send notification of such filing to counsel of record at the addresses that they have provided to the Court.

Jeffrey S. Goldenberg
Todd B. Naylor
Robert Sherwood
Goldenberg Schneider, LPA
35 East Seventh Street, Suite 600
Cincinnati, OH 45202-2012
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

Christian A. Jenkins
Minnillo & Jenkins, Co. L.P.A.
2712 Observatory Avenue
Cincinnati, OH 45202
cjenkins@minnillojenkins.com

*Attorneys for Plaintiff*

s/Jeffrey J. Jones
One of the Attorneys for Defendant
Time Warner Cable Inc.